UNITED STATES DISTRICT COUT
WESTERN DISTRICT OF TEXAS
WACO DIVISION

| | | |
|---|---|---|
| MARTHA A. YOUNG, | § | |
|    Plaintiff | § | |
| | § | |
| VS. | § | A CIVIL ACTION 6:20-cv-00014 |
| | § | |
| TEXAS DEPARTMENT OF | § | |
| CRIMINAL JUSTICE, | § | |
|    Defendant | § | A JURY IS DEMANDED |

**PLAINTIFF'S ORIGINAL COMPLAINT**

**TO THE HONORABLE UNITED STATES DISTRICT JUDGE:**

**COMES NOW, MARTHA A. YOUNG**, Plaintiff herein, complaining of TEXAS DEPARTMENT OF CRIMINAL JUSTICE, Defendant herein (hereinafter referred to as "Defendant," "TDCJ," or "Defendant TDCJ"), and in support would show the Court as follows:

### I.  NATURE OF THE CASE

1. This is an action under Title VII of the Civil Rights Act of 1964, 42 U.S.C. 2000e *et seq.*, for unlawful employment practices based on sex (gender), race, color, national origin, and age.

2. Plaintiff **MARTHA A. YOUNG** ("Plaintiff," "Young," or "Lt. Young") – a Lieutenant of Corrections employed by Defendant TDCJ, alleges that TDCJ retaliated against her for engaging in the protected activity of filing a complaint of discrimination based on race, color, and sex. This retaliation included harassment, hostile work environment, unfavorable and material alterations to the terms and conditions of employment, unwarranted disciplinary actions, and termination.

### II.  JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, because this action is based on Title VII, 42 U.S.C. § 2000e, *et seq.*, a federal statute, which presents a federal

question. This Court also has jurisdiction pursuant to 28 U.S.C. § 1337, because the action is based on a federal statute regulating commerce.

4. Venue is proper in the Western District of Texas, Waco Division, pursuant to 28 U.S.C. §§ 1391(b)(2), because a substantial part of the events or omissions (Defendant's unlawful employment practices) giving rise to Plaintiff's claims occurred in Marlin, Falls County, Texas, located within the territory of the Waco Division.

## III.   PARTIES

5. Plaintiff **MARTHA A. YOUNG** is an individual residing in Falls County, Texas.

6. Defendant **TEXAS DEPARTMENT OF CRIMINAL JUSTICE** is a state agency of the State of Texas, which may be served with process, by serving its Executive Director, Bryan Collier, at 861-B I-45 N., Huntsville, Texas 77320, or the Office of the Attorney General at 300 W. 15th Street, Austin, Texas 78701.

## IV.   FACTS

### A) Young's Outstanding Career With TDCJ:

7. From 1995 until 2018 – twenty-three (23) years – Martha Young served the Texas Department of Criminal Justice as a hard-working, dedicated, career employee. She began her career on the Coffield Unit as a Correctional Officer. For three (3) years, Young drove nearly 200 miles round trip to work and home, because she loved working for the TDCJ.

8. In January of 1998, Young had her first child – a daughter who was born weighing only one (1) pound and who remained for several months in the Neonatal Intensive Care Unit, including a transfer from Waco to Fort Worth. The Human Resources (HR) supervisor at Coffield, Lieutenant Todd, and Young's co-workers thought so highly of Young that she was given significant time off to be with her daughter during the first few months. In addition to time off

Young had already earned or accrued, Lt. Todd also assisted Young in obtaining funds from the Corrections Program Office (CPO) and being awarded or credited with additional leave from the sick pool bank. During this time, Young requested a transfer to reduce her commute and be able to work closer to her baby daughter.

9.   In or around May of 1998, right around the same time Young's daughter was allowed to come home on a machine, Young's request to transfer to TDCJ's Hobby Unit in Marlin, Falls County, Texas, was granted. Young performed well at the Hobby Unit immediately, proving her character, work ethic and dedication. She enjoyed her job and the supervisors she worked with, and she found them easy to talk to. Young's supervisors began to encourage Young to consider advancement, and Young was promoted to Sergeant on October 15, 2003. Young even accepted working nights and made provisions for her daughter during the day, because she loved her job at TDCJ so much.

10.   In January of 2005, Young had a son who passed away, for which she missed only about a month at work and was back at her TDCJ job faithfully and diligently performing her duties.

11.   On August 1, 2008, Young was promoted to Lieutenant. She worked nights again for the first 2 ½ years, covering both the Marlin and Hobby Units as needed. By 2013, she had finally advanced to working days only (called "first shift"). From 2012 to 2015, Lt. Young worked as a shift lieutenant, almost exclusively at the Hobby Unit, where she supervised approximately 11 sergeants and 220 correctional officers, directed the overall supervision of supervisors, correctional officers and inmates (called "offenders" in TDCJ parlance). These responsibilities Lt. Young faithfully and successfully performed included, but were not limited to:

- supervising, scheduling, instructing, training and providing appropriate information to staff;

- directing searches for contraband, counting, feeding and evaluating the work of offenders and supervising offenders in housing;

- hearing and reviewing minor disciplinary hearings on offenders;

- reading, reviewing and properly applying information in offenders' records related to the offenders' health and safety, and the security of the facility;

- supervising, scheduling, instructing, training and providing appropriate information to staff, including her acquired knowledge of correction methods, techniques, practices, and procedure;

- preparing and supervising the maintenance of records, forms and reports, including employee evaluations and performance logs;

- working under limited direction with extensive latitude for the use of initiative and independent judgment.

In 2015, Lt. Young was assigned to the Region VI Office as a rotational lieutenant (considered by TDCJ as a promotional step toward Captain), where she assisted the Assistant Regional Directors with unit audits, was responsible for the motor pool, conducted monthly updates on the unit equipment shut down reports by communicating with each unit, read and responded to offender correspondence, and assisted the Captain with administrative reviews. Lt. Young also prepared reviewing UOF ("use of force") packets and reviewed and corrected them when UOF claims were filed by employees or offenders. By 2017, Lt. Young had become the UOF Coordinator at the Hobby Unit.

12.     Lt. Young's Employee Performance Evaluations during this time period were extremely favorable. According to her 2014 evaluation, Lt. Young "exceeded standards" for four out of six essential job functions, and she "somewhat exceeded" the other two. Lt. Young's rating supervisor, Captain Dana C. Sullivan, credited Lt. Young with having adhered to the expected standards of conduct, including the rules of conduct described in TDCJ's Listing of Employee General Rules of Conduct and Disciplinary Violations. Captain Sullivan also credited Lt. Young with having

adhered to TDCJ's Safety Policy. Lt. Young's 2014 evaluation included the following handwritten note:

> "Lt. Young does a great job ensuring all tasks are completed and that the building schedule is met. Thank you for all your hard work and dedication to the Hobby Unit and to this Agency. It does not go unnoticed!"

13. Lt. Young's 2015 evaluation was even better. Lt. Young now "exceeded standards" for five out of the six essential job functions, and she "somewhat exceeded" the remaining function. She was again credited with having adhered to the expected standards of conduct and TDCJ Safety Policy. Captain Sullivan typed in:

> "Lt. Young brings leadership and experience to the unit and is a great asset to this agency. Lt. Young has the potential to promote and achieve unlimited success. Keep up the great work!"

Major Jameson even added the following handwritten note:

> "Thanks for all that you do for this unit! Keep it up!"

### B) Young's Denial of Captain Position and Resulting EEO Discrimination Complaint:

14. As early as 2015, Young began to consider her potential for advancement to Captain. At the suggestion of Hobby Unit's new Warden – Vickie Wright – Lt. Young enrolled in an online program at Columbia Southern University (which Warden Wright indicated was her *alma mater*). By 2017, Lt. Young was within 15 hours of obtaining her associates degree in Criminal Justice[1]. In June of 2017, Lt. Young – a black, African-American woman – was passed over for promotion in favor of white employee named Kristi Colbert, whom Lt. Young believed to be less qualified.

15. On or about June 28, 2017, Young filed an internal EEO complaint in TDCJ's Human Resources Department, alleging that Vikki Wright – a white woman and Senior Warden of the Hobby Unit – had discriminated against Lt. Young on the basis of race, color and sex in failing to

---

[1] Young ultimately completed her degree and graduated in the Fall of 2018, despite being subjected to her unlawful termination from TDCJ.

promote Young to Captain. Among Lt. Young's allegations were her own qualifications and career history with TDCJ, as well as the following paragraph(s):

> [Executive Directive PD-12, Dated May 1, 2017] states that promotions will be based solely on an individual's qualifications and ability to perform the essential functions of the position. It states that TDCJ does not tolerate any artificial barriers denying applicants or employees equal opportunity in any phase of these employment-related processes.
>
> To the best of my knowledge there has never been a Captain from Marlin let alone a black female one. We have no representation in Administration…[2]

In her supporting documentation, Lt. Young related to HR that the sole reason Warden Vikki Wright had given Young for not selecting her for the Captain position – that Young allegedly "possessed poor management skills." At that time, Lt. Young had been with TDCJ for twenty-two (22) years and had been a Lieutenant for nine (9). She had worked as the Administrative Lieutenant working with Captains in preparation for Captain and assisted with offenders and staff investigations, and managed a shift of one hundred thirty-eight (138) people. At no time during Lt. Young's nine (9) years as Lieutenant had anyone ever alleged that Lt. Young had poor management skills. Moreover, the white employee who received the Captain position – Lt. Kristi Colbert – had only been a Lieutenant for two years and four months (compared to Lt. Young's nine) and was significantly less experienced and less qualified than Young.

16.     On July 20, 2017, Lt. Young was notified that her grievance had been rejected. The HR person falsely claimed Young's EEO complaint had been sent back to Young for corrections but that Young had failed to make the corrections and return it within a specified twenty-one (21) day period. The HR person even falsified Young's signature to indicate Young had picked the grievance up on a day Young was not even at work. On July 25, 2017, Young resubmitted her

---

[2] As quoted elsewhere in her June 28, 2017, Complaint, TDCJ PD-12 also states: "The TDCJ is also committed to providing a work environment free of all forms of employment discrimination and maintaining a diverse workforce."

complaint with the additional information requested, but it was rejected again on or about July 28, 2017, as untimely. Lt. Young filed a complaint against the HR representative on July 31, 2017, alleging her EEO complaint had been rejected because of an alleged time lapse caused by the HR representative's negligence, lack of experience and failure to maintain documentation and accurate records. Lt. Young requested that her complaint be investigated, but it never was.

17. The initial result of the denial of Lt. Young's complaint was that the denial of her promotion was sustained despite her superior experience and qualifications. ***The more significant result of Lt. Young's complaint, however, was that Warden Wright's staff retaliated against Lt. Young – first by constantly changing her work hours, then by subjecting Young to six separate, unfounded and pretextual disciplinary actions over the next few months, then ultimately recommending Lt. Young for termination from TDCJ a year later.*** In her first twenty-two (22) brilliant years of service, Lt. Young had never received a disciplinary action – nor had she ever had a negative evaluation. Within one year after filing her EEO discrimination complaint, Young was terminated from TDCJ in the summer of 2018, losing her salary, benefits, retirement contributions, and her criminal justice career forever.

   C) **Retaliatory and Pretextual Disciplinary Actions / Termination:**

18. From almost immediately after Lt. Young filed her EEO Complaint until Young's termination a year later, Warden Wright and her managerial staff subjected Young to a continuing course of retaliation. They reduced Young's job duties so that she was no longer doing Ombudsman investigations, staff complaints or assisting Captains with admin reviews. They subjected Young to fluctuating work hours, including erratically shifting Young back and forth from day shift to night shift with little to no warning or consistency – causing Young to lose a part time job she worked on the side. One time, Young asked Captain Sullivan about her suddenly

erratic schedule, and the Captain informed Young that was the way Warden Wright had said to do it, and Captain Sullivan informed Young she better not go to the Warden and tell her it was interfering with Young's part time job, because "she doesn't care."

19. Warden Wright's managerial staff also subjected Lt. Young to unfounded and false disciplinary actions. Within ninety (90) days of Young's initial June 28, 2017, EEO Complaint, on September 19, 2017, Captain Colbert (who had been awarded the Captain position instead of Young) initiated a charge against Young for alleged "substandard duty performance" in assigning three offenders to live in the administrative segregation ("Ad Seg") dayroom. The same month, Young was subjected to a disciplinary action for allegedly having failed to report an attempted hanging. In October of 2017, Young was subjected to a disciplinary action for an alleged failure to write up an alleged unauthorized use of force allegation. That same month, Young was subjected to a disciplinary action for an alleged cyber security breach (unauthorized access). In each case, the allegations against Young were false, or the charges were categorized as more offenses than similar or more severe actions by other employees were categorized. Lt. Young filed grievances in response to each of these disciplinary charges and attempted to alert TDCJ that she was being unlawfully retaliated against for having filed her initial EEO complaint against Warden Wright, but she received no protection or justice from TDCJ.

20. From October of 2017 to February of 2018, Lt. Young was on twelve (12) weeks of leave under the Family and Medical Leave Act (FMLA), for a surgery. When Young returned, she discovered her office had been taken away from her and given to a Sergeant. Young's 8-5 day shift (with weekends and holidays off) was taken away from her. Instead she was assigned to a "first shift," meaning she now rotated in and out of holidays and weekends. After a few weeks, Young was then moved to the night shift.

21. From September of 2017 to February of 2018, in addition to filing grievances alleging she was being subjected to retaliation, Lt. Young made several telephone calls to TDCJ's Deputy Executive Director – Oscar Mendoza – attempting to advise him of the retaliation against her and seeking his assistance and protection. Finally, in or around February of 2018, Mendoza referred Lt. Young to the Regional Director. Upon information and belief, the Regional Director intervened, and each of the four preceding disciplinary actions "disappeared." None were taken to a final result, and none were sustained or found to be truthful against Lt. Young. However, the retaliation against Young continued and escalated.

22. On May 29, 2018, an incident occurred between Lt. Young and a female offender. The offender patted Young on the back-left side as Young was conducting her rounds. This unexpected and sudden action by the offender startled Young, and Young spontaneously turned around and barely struck the offender accidentally with an open left hand. Another correction officer placed the offender in hand restraints and escorted her to Ad Seg. Lt. Young instructed another officer to put the remaining offenders back in their cells and start over. Once Young released the offender from Ad Seg, she spoke with her. The offender apologized to Young for touching her and claimed she had been just trying to get Young's attention. The offender was fine and there was no confrontation between the two, so Lt. Young sent the offender back to her building. After a few days, Young returned to work and was informed by offenders that Captain Colbert (who had reached the Captain position over Young and against whom Young had filed a retaliation grievance in the Fall of 2017) was inciting the offender to make a use of force allegation, and enlisting other offenders to make witness statements alleging use of force by Young.

23. The following month, Lt. Young was interviewed about the incident and related it as described in the preceding paragraph. On June 19, 2018, Lt. Young was served with two

disciplinary actions, which were written in such a way as to make it look like Young had not only *willingly* struck the offender, but that Young had admitted to doing so – neither of which was true. Lt. Young was charged with unauthorized use of force and failure to report it (in fact, because the incident did not constitute a use of force, there was nothing to report). As a result of these final disciplinary actions, Young was recommended for termination. That day, Lt. Young again filed a grievance notifying TDCJ that all of the previous disciplinary actions against her had started after her June 2017 internal EEO complaint, and that she was being retaliated against. Instead of protecting Lt. Young from unlawful retaliation, TDCJ terminated her in the summer of 2018, causing Young to lose her salary, benefits, retirement contributions, and her criminal justice career forever.

## V.     EXHAUSTION OF ADMINISTRATIVE REMEDIES

24.     Young timely submitted a questionnaire/complaint to the Texas Workforce Commission Civil Rights Division on or about August 14, 2018, well within one hundred eighty (180) days and three hundred (300) days of her termination, and well within one hundred eighty (180) and three hundred (300) days after the period of continuous retaliatory action of subjecting her to a hostile work environment finally ended. On her questionnaire/complaint, Young indicated her desire to file a Charge of Discrimination, as well as her desire that her Charge be dual-filed with both the Texas Workforce Commission's Civil Rights Division (TWC CRD) and the Equal Employment Opportunity Commission (EEOC).

25.     The Texas Workforce Commission prepared a Charge of Discrimination for Young to sign, Young executed it promptly on September 28, 2018, still well within one hundred eighty (180) and three hundred (300) days after her termination, and well within the one hundred eighty (180) and three hundred (300) days after the period of continuous retaliatory action of subjecting her to

a hostile work environment finally ended. The Charge was referred to the EEOC as the investigating agency under the workshare agreement between TWC and the EEOC.

26. When the Texas Department of Criminal Justice failed to resolve this matter at the administrative level, the U. S. Department of Justice, Civil Rights Division issued Young a right to sue letter on October 7, 2019, which Young and her attorney received on October 14, 2019. Young timely files this Complaint within ninety (90) days of receiving her right to sue letter.

## VI. CAUSES OF ACTION

### A) COUNT 1: Title VII Retaliation: Hostile Work Environment.

27. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1-26.

28. Defendant TDCJ is an "employer" as defined under Title VII.

29. Lieutenant Young's internal EEO complaint alleging discrimination on the basis of race, color and sex, as well as her actions in pursuit of it, were all protected activity under Title VII of the Civil Rights Act of 1964), 42 U.S.C. §2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII").

30. Further, each and every subsequent grievance Young filed with TDCJ – claiming that the disciplinary actions being initiated against her were in retaliation for having filed the EEO complaint – was a separate protected activity under Title VII.

31. Title VII expressly prohibits discrimination based on race, color or six, and it makes such discrimination an unlawful employment practice. Young's internal EEO compliant, her actions in pursuit of it, and her grievances described in the preceding paragraph all opposed

32. Title VII expressly prohibits an employer from retaliating against an employee because she has opposed any practice made an unlawful practice by Title VII, because she has filed a charge,

or because she has testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. §2000e-3.

33.     From June of 2017 until Young's termination in the Summer of 2018, TDCJ subjected Young to a hostile work environment, including but not limited to hostility and arbitrary behavior toward her EEO complaint, harassment, discipline, erratically fluctuating work hours that cause her to lose a part time job, verbal abuse, removing her from her office and giving her office to a lower ranking officer, are all actions that would have dissuaded a reasonable worker from complaining about discrimination.

34.     The reasons given for such actions taken against Young were pretexts for retaliation and were not the true reason. The true reason was retaliation for complaining about discrimination and previous retaliation.

35.     Plaintiff need not prove that every TDCJ agent, employee or representative participating in the creation of her hostile work environment had a retaliatory motive. Rather, in the alternative, Plaintiff would show that one or more of those TDCJ actors – including but not limited to Warden Wright and Captain Colbert – did act out of an unlawful retaliatory motive. Regardless of whether any or all of the other actors involved share this retaliatory motive, Wright's, Colbert's or any other TDCJ agent's, employee's, or representative's retaliatory motive is imputed to such other actors because: 1) Wright, Colbert, or other TDCJ agents, employees, or representatives committed acts of a retaliatory nature against Young; 2) Wright, Colbert, or other TDCJ agents, employees, or representatives intended those acts would cause Young to suffer a hostile work environment or other adverse employment action; and 3) Wright, Colbert, or such other TDCJ agents, employees, or representatives actions caused the hostile work environment or other adverse employment action, regardless of whether Wright, Colbert, or other TDCJ agents, employees, or representatives

with a retaliatory motive participated in the hostile work environment.

36. Young hereby sues for retaliation in the form of a hostile work environment under Title VII.

### B) COUNT 2: Title VII Retaliation: Termination

37. Plaintiff realleges and incorporates by reference all allegations in all preceding paragraphs 1-26.

38. Defendant TDCJ is an "employer" as defined under Title VII.

39. Lieutenant Young's internal EEO complaint alleging discrimination on the basis of race, color and sex, as well as her actions in pursuit of it, were all protected activity under Title VII of the Civil Rights Act of 1964), 42 U.S.C. §2000e, et seq., as amended by the Civil Rights Act of 1991 ("Title VII").

40. Further, each and every subsequent grievance Young filed with TDCJ – claiming that the disciplinary actions being initiated against her were in retaliation for having filed the EEO complaint – was a separate protected activity under Title VII.

41. Title VII expressly prohibits discrimination based on race, color or six, and it makes such discrimination an unlawful employment practice. Young's internal EEO compliant, her actions in pursuit of it, and her grievances described in the preceding paragraph all opposed

42. Title VII expressly prohibits an employer from retaliating against an employee because she has opposed any practice made an unlawful practice by Title VII, because she has filed a charge, or because she has testified, assisted or participated in any manner in an investigation, proceeding, or hearing under Title VII. 42 U.S.C. §2000e-3.

43. TDCJ retaliated against Young by terminating her in the Summer of 2018.

44. The reasons given for Young's termination were pretexts for retaliation and were not the

true reason. The true reason was retaliation for complaining about discrimination and previous retaliation.

45.     Plaintiff need not prove that every TDCJ agent, employee or representative participating in Young's termination had a retaliatory motive, or that any ultimate decision maker(s) in Young's termination had a retaliatory motive. Rather, in the alternative, Plaintiff would show that one or more of those TDCJ actors – including but not limited to Warden Wright and Captain Colbert – did act out of an unlawful retaliatory motive. Regardless of whether any or all of the other actors involved share this retaliatory motive, Wright's, Colbert's or any other TDCJ agent's, employee's, or representative's retaliatory motive is imputed to them because: 1) Wright, Colbert, or other TDCJ agents, employees, or representatives committed acts of a retaliatory nature against Young; 2) Wright, Colbert, or other TDCJ agents, employees, or representatives intended those acts would cause Young to suffer an adverse employment action; and 3) Wright's, Colbert's, or such other TDCJ agents', employees', or representatives' actions caused the ultimate employment action of termination, regardless of whether Wright, Colbert, or other TDCJ agents, employees, or representatives participated in the ultimate employment action of termination.

46.     Young hereby sues for retaliation in the form of termination under Title VII.

### VII.     PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff Martha A. Young respectfully requests the following relief:

    a.  Grant a permanent injunction enjoining Defendant, its officers, successors, assigns and all persons in active concert or participation with Defendant, from retaliations against other employees who file complaints based on sex (gender), race, color, national origin, or age, who oppose such discriminatory practices, or who participate in or provide information in investigations of such complaints;

    b.  Order Defendant to make Young whole by reinstating her to her former position, with all seniority, salary, benefits, retirement eligibility and any other employee statuses completely restored;

    c. Order Defendant to make Young whole by providing compensation for past and future pecuniary and economic losses resulting from Defendant's unlawful practices described above, including but not limited to back pay, front pay, health and other fringe benefits and pecuniary harm resulting from the loss of such benefits, as well as the pecuniary harm to Young's retirement contributions, vesting, draw schedule, or any other pecuniary loss;

    d. Order Defendant to make Young whole by providing compensation for non-pecuniary losses resulting from the unlawful practices described above, including but not limited to emotional pain, suffering, inconvenience, loss of enjoyment of life, humiliation, loss of self-esteem, loss of civil rights and nominal damages, in an amount to be determined at trial;

    e. Order Defendant to pay Young's litigation costs and expenses, including reasonable attorneys' fees, and pre-judgment and post-judgment interest; and

    f. Grant such further relief as the Court deems necessary and proper in the public interest.

## **DEMAND FOR JURY**

Plaintiff demands trial by jury of all issues of fact raised by its complaint.

Respectfully submitted,

**THE HART LAW FIRM**

*[signature]*

Walter L. Taylor
State Bar No. 19727030
*Wtaylor@thehartlawfirm.com*
6630 Colleyville Blvd, Suite 100
Colleyville, Texas 76034
Tel: (817) 329-7020
Fax: (512) 329-7021

**ATTORNEYS FOR MARTHA A. YOUNG**